IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SPENCER LONG,** <br> **Plaintiff** <br><br> v. <br><br> **CO CARA, et al.,** <br> **Defendants** | No. 1:22-CV-1346 <br><br> (Judge Munley) |

## MEMORANDUM

Plaintiff Spencer Long initiated the above-captioned *pro se* civil rights action under 42 U.S.C. § 1983.[1] He alleges that two corrections officers violated his Eighth Amendment rights by using excessive force. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, claiming that Long failed to exhaust his administrative remedies. The court will grant in part and deny in part Defendants' motion.

## I. BACKGROUND

Long's complaint is brief and straightforward. He recounts that, on May 31, 2022, after an altercation with another inmate, he was escorted by two corrections officers to the medical department. (Doc. 1 at 1). Long alleges that the corrections officers used excessive force during the transport when they

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

"push[ed] his head through the door and caused blood to come out of his head," leaving him with "physical pain and damage." (Id.) In another section of his complaint, he alleges that the officers "slam[med]" his head "into the door." (Id. at 2).

Long asserts that he attempted to grieve the excessive force incident through the prison grievance system but was hindered in this process because his grievance and other complaints went unanswered. (Id. at 1-2; Docs. 1-1, 1-3, 1-5). He also claims that he did not receive proper medical treatment after the incident, alleging that he "submit[ed] numerous sick-call" requests to the medical department but was not seen. (Doc. 1 at 2; Docs. 1-4, 1-6).

Long initially sued the two corrections officers by identifying them as "John Doe" defendants because he did not know their names. (See Doc. 1 at 1, 3). Following several court orders to the Superintendent of SCI Mahanoy, the corrections officers were identified as "CO Cara" and "CO Charters." (See Doc. 17). Cara and Charters were then issued copies of the complaint and waivers of service of summons, which they timely returned. (See Docs. 19, 23).

Following service, Defendants moved to partially dismiss Long's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 28). The court granted that motion. (See generally Docs. 33, 34). Specifically, the court dismissed Long's official capacity claims, his Fourteenth Amendment due

2

process claims (whether substantive or procedural), any First Amendment Petition Clause claim that may have been asserted, and Long's Eighth Amendment medical indifference claims. (See Doc. 33 at 5-14; Doc. 34 ¶¶ 1-3). Long was given the option of filing an amended complaint or proceeding only with his excessive force claims against Defendants. (See Doc. 33 at 14-15; Doc. 34 ¶¶ 4-5). Long chose the latter by default when he failed to file an amended complaint. (See Doc. 36).

Defendants now move for summary judgment on the excessive force claims, raising the affirmative defense of failure to exhaust administrative remedies. (See generally Docs. 46, 48). Long timely filed a brief in opposition (Doc. 50) and a supporting declaration (Doc. 51). Defendants did not file a reply and the time in which to do so has passed, so their motion for summary judgment is now ripe for disposition.

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, and

3

"disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original). Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d

4

Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## III. DISCUSSION

In their motion for summary judgment, Defendants contend that Long failed to exhaust his administrative remedies. Specifically, they argue that Long did not properly appeal his initial grievance denial. (See Doc. 48 at 3). After careful consideration, the court finds that Long administratively exhausted his excessive force claim with respect to Charters but not Cara.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. See id. § 1997e(a); Ross v. Blake, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. See Woodford v. Ngo, 548 U.S. 81, 85 (2006). The exhaustion process is governed by the contours of the prison grievance system in effect where the inmate is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Woodford, 548 U.S. at 90-91.

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative

5

remedies in most cases. See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5), (8). An adverse decision by the grievance coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. Id. § 2(A)(1). Finally, an adverse decision by the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision. Id. § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other conditions, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance sets forth "the specific relief sought," including "compensation or other legal relief normally available from a court." Id. § 1(A)(11).

As noted above, Defendants contend that Long failed to properly appeal his initial grievance denial to the Facility Manager or to the SOIGA, as required by DC-ADM 804.  Normally, such a misstep would result in procedural default of any claim asserted in the at-issue grievance.  Yet as Long correctly points out, (see Doc. 50 ¶ 25; Doc. 51), prison officials rendered exhaustion complete when they failed to timely respond to his initial grievance.

The Rule 56 record shows that Long filed grievance number 992601 (the only grievance at issue) on June 8, 2022.  (See Doc. 49-3 at 1, 4).  That grievance was received by the Facility Grievance Coordinator on August 8, 2022.[2]  (Id. at 4). On September 6, 2022, Long was notified that DOC officials required an extension to respond to his grievance.  (Id. at 3).  This extension request, however, was too late.  Pursuant to DC-ADM 804, prison officials had 15 working days (from the date the grievance was entered into the tracking system) to respond to Long's grievance or to request a 10-working-day extension.  See DC-ADM 804 § 1(C)(5)(g), (h).  Thus, DOC officials had until August 29, 2022, to respond to Long's properly filed grievance or to seek an extension.  See id.  Their failure to respond until September 6, 2022, rendered exhaustion complete as to grievance 992601.  See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) (requiring strict compliance by prison officials with time limits set forth in prison's

---

[2] Neither party explains the two-month delay between filing and receipt of grievance 992601.

own polices and holding that prison's untimely response to "a properly submitted grievance or appeal" rendered administrative remedies unavailable and exhaustion complete).

This conclusion, however, is not the end of the analysis. Review of grievance 992601 reflects that Long only asserted an excessive force claim against one corrections officer. (See Doc. 49-3 at 4). Long alleged that "*an officer* pushed [his] head through the door," and that, upon questioning this officer about why he used that type of force and threatening to "write him up," the officer responded by simply giving Long his name. (Id. (emphasis added)). Long could not remember the officer's full name, only that it "begins with the letters Ch-----" and that the incident was "all on video." (Id.) During the ensuing investigation, the Facility Grievance Coordinator plainly identified the at-issue corrections officer as "Officer Charters," and noted that Long accused only Charters of "pushing [his] head through a door." (See id. at 1).

Consequently, while the DOC's failure to timely respond to Long's grievance renders exhaustion of that grievance complete, the only claim that Long asserted and exhausted (via the DOC's default) is his excessive force claim against Charters. As to Cara, no claim was ever asserted against him in grievance 992601, and thus no claim against him could be considered exhausted based on the DOC's failure to timely respond to that grievance. And since no

8

exhaustion occurred as to Cara (even though Long could have easily included an excessive force claim against him in grievance 992601), Long procedurally defaulted this claim. See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004). Long provides no valid excuse for his procedural default. Therefore, summary judgment must be granted in Cara's favor due to Long's failure to exhaust administrative remedies. Charters' Rule 56 motion, on the other hand, will be denied.

## IV. CONCLUSION

Based on the foregoing, the court will grant in part Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. Judgment will be entered in Cara's favor as to Long's Section 1983 Eighth Amendment excessive force claim because Long failed to exhaust administrative remedies with respect to this claim. Summary judgment will be denied as to Long's parallel excessive force claim against Charters. An appropriate Order follows.

Date: 7/15/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court